THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM GRIFFIN, Appellant.

Fourth Department, December 26, 1991

## APPEARANCES OF COUNSEL

*Ivan S. Fisher (Alan Scribner* of counsel), for appellant.

*Howard R. Relin, District Attorney (Robert Mastrocola* of counsel), for respondent.

## OPINION OF THE COURT

BOOMER, J.

After trial, defendant was convicted of murder in the second degree for intentionally causing the death of the victim by stabbing him in the abdomen. The immediate cause of death was acute respiratory distress and massive pulmonary edema caused by an abdominal abscess, which in turn was caused by the stab wound that had perforated the duodenum.

On appeal, defendant primarily contends that the trial court committed reversible error in precluding defendant's medical experts from testifying that the gross negligence of physicians at the hospital where the victim was treated was the superseding cause of the victim's death. The experts were prepared to testify that the treating physicians were grossly negligent in failing to discover the perforation in the duodenum, in releasing the victim from the hospital in spite of signs of infection, in delaying treatment for the infection, and in failing to reinsert a drainage tube. That gross negligence, they concluded, was the superseding cause of death. We hold that the trial court properly excluded that testimony and we affirm the conviction.

Long ago, in *People v Kane* (213 NY 260, 270), the Court of Appeals recognized the well-established rule that "[i]f a felonious assault is operative as a cause of death, the causal co-operation of erroneous surgical or medical treatment does not relieve the assailant from liability for the homicide. It is only where the death is solely attributable to the secondary agency, and not at all induced by the primary one, that its intervention constitutes a defense." As authority for that rule, the Court of Appeals cited 2 Bishop, Criminal Law, §§ 638, 639:

" 'And the doctrine is established, that if the blow caused the death, it is sufficient, though the individual might have recovered * * * had the surgeons treated the wound properly.' (§ 638.)

" 'But where the wound is not of itself mortal, and the party dies in consequence solely of the improper treatment, not at all of the wound, the result is otherwise. And it is the same if the wounded person becomes sick and dies of an independent disease, not connected with the wound, which was not mortal. But we should not suffer these propositions to carry us too far; because, in law, if the person dies by the action of the wound, and by the medical or surgical action,

jointly, the wound must clearly be regarded sufficiently a cause of the death.' (§ 639.)" *(People v Kane, supra,* at 273-274.)

Later, in *People v Stewart* (40 NY2d 692), the Court of Appeals, quoting from *People v Kane (supra),* reaffirmed the rule that the intervention of erroneous surgical and medical treatment will not constitute a defense to homicide unless the death is solely attributable to that erroneous treatment and not at all induced by the felonious assault. Thus, the court concluded, "despite the fact that the defendant had inflicted serious wounds, he could not have been convicted if the death was solely attributable to grossly negligent treatment" *(People v Stewart, supra,* at 698). The example given in both *People v Kane (supra,* at 270) and *People v Stewart (supra,* at 698) of a negligent, intervening act that would constitute the sole cause of death, was "the negligent administration of a deadly poison". In *People v Stewart (supra),* the assailant who stabbed the victim was held not responsible for the victim's death where the death was attributable solely to negligence committed during an operation performed at the hospital to correct an incarcerated hernia, a condition not related to the stabbing, and which operation was not made necessary by the stabbing.

More recently, the Court of Appeals reaffirmed the *Kane-Stewart* rule in *Matter of Anthony M.* (63 NY2d 270, 280): "Even an intervening, independent agency will not exonerate defendant unless 'the death is solely attributable to the secondary agency, and not at all induced by the primary one' *(People v Kane,* 213 NY 260, 270, *supra).* "

Defendant erroneously contends that *People v Eulo* (63 NY2d 341), decided the same day as *Matter of Anthony M. (supra),* has changed the rule and that, now, the gross negligence of a treating physician may be a superseding cause of death which exonerates the defendant from the homicide even where that gross negligence is not the sole cause of death. In *People v Eulo (supra,* at 359), a case dealing primarily with the issue of when death occurs, the Court of Appeals stated that even if the death was prematurely announced because of a doctor's negligence, the subsequent removal of the victim's organs "may have been a cause of death, but that negligence would not constitute a superseding cause of death relieving defendants of liability *(see People v Stewart,* 40 NY2d 692, 697-698; *People v Kane,* 213 NY 260, 270)." The court further stated that "[i]f, however, the pronouncements of death were premature due to the gross negligence or the intentional

wrongdoing of doctors, as determined by a grave deviation from accepted medical practices or disregard for legally cognizable criteria for determining death, the intervening medical procedure would interrupt the chain of causation and become the legal cause of death (see *People v Kane, supra,* at pp 270-271; see, also, *State v Scates,* 50 NC 420)" *(People v Eulo, supra,* at 359). In *State v Scates (supra),* the Supreme Court of North Carolina held that a second, independent act, which killed the victim, absolved the perpetrator of the first act for responsibility for the homicide. There, the defendant was burned by one person and later struck by another. He died as a result of the striking and not as a result of the burns.

Neither *Eulo (supra)* nor *Scates (supra)* stands for the proposition that an assailant may be absolved from responsibility for homicide because of the gross negligence of physicians in failing to provide proper treatment. Both cases discussed an intervening *act* as the superseding cause of death and in both instances the act could be said to be the *sole* cause of death.

For two reasons, a failure to provide proper medical treatment cannot, as a matter of law, be a superseding cause of death. First, it cannot be the sole cause of death because, in such a case, the death is caused by the cooperation of the initial assault as well as the failure to prevent that assault from resulting in death. Second, only an intervening act or force can become a supervening cause. In *Miller v Board of Educ.* (291 NY 25, 29-30), the court stated the rule in civil cases: " 'Where the defendant has by his conduct set in motion forces which would not have resulted in harm to another but for the failure of a third person to act or perform some duty which the law imposes upon him the failure on the part of such third person to perform the act does not break the causal relation between the defendant's conduct and the plaintiff's damage.' (Harper on Torts, § 115, p. 264. To the same effect, American Law Institute, Restatement of the Law of Torts [Negligence], §§ 431, 432, 433, 452.) See, also, *Carlock v. Westchester Lighting Co.* (268 NY 345) and American Law Institute, Restatement of the Law of Torts (Negligence), section 439."

In that respect, the criminal law rule of superseding cause is the same. In *People v McGee* (31 Cal 2d 229, 243, 187 P2d 706, 714-715), the California Supreme Court held that the surgeon's neglect, for more than 10 hours, grossly contrary to good surgical practice, to control the victim's hemorrhage, was not a supervening cause of death: "[D]efendant cannot com-

plain because no force intervened to save him from the natural consequence of his criminal act. The factual situation is in legal effect the same, whether the victim of a wound bleeds to death because surgical attention is not available or because, although available, it is delayed by reason of the surgeon's gross neglect or incompetence. *The delay in treatment is not in fact an intervening force; it cannot in law amount to a supervening cause"* (emphasis added). In *Wright v State* (374 A2d 824, 829 [Del]), the Delaware Supreme Court, in holding that the malpractice of the treating physician was not a superseding cause of the victim's death, stated: "[A]nother's failure to act cannot save a defendant from the consequences of his criminal act." In *People v Townsend* (214 Mich 267, 183 NW 177), the victim died of blood poisoning resulting from injuries inflicted by defendant. Appropriately, the court wrote: "Defendant cannot be heard to urge in exculpation of his crime that the wounds inflicted through his culpable negligence were not prevented from causing the death by the treatment of the physician" *(People v Townsend, supra,* at 279, *supra,* at 181).

Many courts of our sister States have also held that an assailant cannot be relieved from responsibility for homicide based on the failure of a third party to provide effective medical treatment unless that treatment constitutes the sole cause of death. For example, in *State v Jacobs* (194 Conn 119, 125-126, 479 A2d 226, 230, *cert denied* 469 US 1190), the Supreme Court of Connecticut wrote: "Gross maltreatment by attending physicians constitutes a defense only in the exceptional case where that maltreatment is the sole cause of the victim's death." In *Jacobs (supra),* the claimed gross negligence was the failure of the hospital to repair certain injuries to the renal artery and duodenum caused by a bullet wound inflicted by defendant. The Court held that the testimony concerning the claimed gross negligence of treating physicians was immaterial because "the defendant was unable to offer evidence to prove that the claimed gross negligence was the sole cause of death." *(Supra,* at 126, *supra,* at 230.) Many other cases are to the same effect *(see, Wright v State, supra; State v Bennis,* 457 NW2d 843, 845 [SD]; *State v Sauter,* 120 Ariz 222, 585 P2d 242; *see also,* Annotation, *Homicide: liability where death immediately results from treatment or mistreatment of injury inflicted by defendant,* 100 ALR2d 769).

Here, because the proffered evidence of alleged gross malpractice, if believed by the jury, would not relieve defendant

from responsibility for the homicide, that evidence was immaterial, and because it was immaterial, it was properly excluded. Although there appears to be no reported case in New York State where a court has held it proper to exclude such evidence, courts in other jurisdictions have so held *(see, e.g., People v McGee, supra; State v Jacobs, supra; Wright v State, supra;* and cases cited in Annotation, 100 ALR2d 769, 797-798).

Defendant also contends that the trial court erred in instructing the jury that, in order for erroneous medical treatment to constitute a superseding cause, it must be the only cause of death. For the reasons previously discussed, this contention lacks merit.

Accordingly, defendant's conviction for murder in the second degree should be affirmed.

DENMAN, P. J., GREEN, PINE and DAVIS, JJ., concur.

Judgment unanimously affirmed.